## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

ANTHONY GRAVANTE
49 Pine Hill Ave
Norwalk, CT 06855,

      Plaintiff

v.

SAP AMERICA, INC.
3999 West Chester Pike
Newtown Square, PA 19073,

      Defendant

No.

## COMPLAINT

Plaintiff Anthony Gravante ("Mr. Gravante"), through his undersigned counsel, for his Complaint against Defendant SAP America, Inc. ("SAP") states as follows.

## INTRODUCTION

1.    This action seeks to hold SAP liable for its unlawful termination of Mr. Gravante's employment, on the basis of his age, in violation of the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621, *et seq.* ("ADEA").

## THE PARTIES

2.    Mr. Gravante is a resident of Norwalk, Connecticut, and a former employee of SAP.

3.    Mr. Gravante is presently 62 years old.

4.    SAP is a corporation organized and existing under the laws of the State of Delaware with its principal place of business at 3999 West Chester Pike, Newtown Square, Pennsylvania.  It is in the business of developing enterprise grade software.

5.     SAP is the principal United States subsidiary of SAP SE, its German parent corporation, which as of December 2024 had over €74,000,000,000 in assets and net income of over €3,100,000,000.

6.     SAP has more than 13,000 employees within the United States and is an employer within the meaning of the ADEA. 29 U.S.C. § 630(b).

## JURISDICTION AND VENUE

7.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 as it arises under the ADEA, a law of the United States.

8.     The Court has personal jurisdiction over SAP as it is domiciled in the Commonwealth of Pennsylvania, and it is registered to do business in this Commonwealth.

9.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because SAP resides in this District and Division.

## FACTS

10.     SAP originally hired Mr. Gravante in or around mid-2007. Due to economic conditions, Mr. Gravante voluntarily accepted a layoff in 2009 to save the positions of colleagues with families. Following this separation from SAP, the company engaged Mr. Gravante as an independent contractor for several years.

11.      On or about September 30, 2019, SAP rehired Mr. Gravante as a W-2 employee in the position of Education Consultant.

12.     Throughout his employment, Mr. Gravante performed his duties in a highly competent and professional manner.

13.     During his tenure, Mr. Gravante received a promotion to the position of Senior Education Consultant.

14.     At the time of his termination in 2024, Mr. Gravante's annual salary was approximately $153,000.

15.     In or around early 2024, SAP announced a global restructuring plan intended to reduce its workforce, ostensibly to increase its focus on Business AI technology.

16.     In or around late February 2024, during a one-on-one remote meeting, Mr. Gravante's manager, Marie-Line Segla ("Segla"), asked Mr. Gravante if he wished to accept an early retirement package. Mr. Gravante declined the offer.

17.     During this same meeting, Segla characterized Mr. Gravante's current role as "dead-end" and told him that SAP was looking for "newer, younger" people.

18.     On or about February 23, 2024, Mr. Gravante memorialized this conversation in an email to Segla's manager, Luzian Kern.

19.     On or about March 5, 2024, during a team meeting conducted via Microsoft Teams, Segla made explicit statements regarding SAP's hiring strategy that demonstrated a bias against older workers, again stating: SAP wanted "new, young people."

20.     In or around April 2024, during another team meeting, Segla reiterated SAP's discriminatory preference for younger employees to fill roles in the "transformation." Segla stated that SAP intended to recruit younger people as part of its transformation to an AI-focused enterprise.

21.     On April 15, 2024, Mr. Gravante received a "Next Level Transformation Notification Memo" via email from Segla, formally notifying him that his position had been eliminated effective immediately, with an employment end date of May 31, 2024.

22.     The notification memo claimed the termination was necessary because SAP "must ensure the organizational setup, skills, and processes are primed to meet future business needs."

23.    Mr. Gravante's termination was not based on performance. Indeed, the April 15, 2024 notification expressly stated: "Please know these changes do not negate the appreciation SAP has for your efforts during your tenure."

24.    Despite Mr. Gravante's repeated requests to be reskilled or upskilled in AI technologies—a practice SAP claimed to offer to impacted employees—SAP denied Mr. Gravante these opportunities while simultaneously stating its intent to recruit younger people for these very roles.

25.    Mr. Gravante applied for internal positions, including roles within the "SAP Academy for Customer Success." These postings contained discriminatory language indicating they were "specifically for candidates early in their careers."

26.    On May 27, 2024, prior to his final separation date, Mr. Gravante sent an email to SAP's CEO, Christian Klein, titled "PRIVATE - Gravante, Anthony - Next Level Transformation Memo." In this email, Mr. Gravante noted that he was "amongst the oldest, if not the oldest" one being let go, and he explicitly alleged that "age has played a troubling role in my termination," citing the comments made regarding SAP seeking "newer, younger people."

27.    Although Mr. Gravante was subsequently contacted by SAP's Global People Compliance office on June 2, 2024, and an investigation was purportedly opened, SAP failed to rectify the discrimination. The compliance officer, Rachel Winship, ceased communication with Mr. Gravante in August 2024 without providing a resolution or findings.

28.    SAP laid Mr. Gravante off with an effective date of May 31, 2024.

29.    Mr. Gravante subsequently applied for several positions within SAP for which he was qualified and for which he should have received a preference given his layoff, but SAP did

not hire him on account of his age and in retaliation for complaining about his selection in the reduction in force on account of his age.

30.     Instead, SAP compounded its unlawful conduct by directly expressing an unlawful, ageist preference for younger workers, noting that the positions were for candidates "early in their careers" to develop "next generation" workers.

31.     Despite his best efforts, Mr. Gravante has been unable to obtain comparable employment since SAP terminated his employment.

32.     Following the termination of his employment, SAP posted an opening in Mr. Gravante's former role.

33.     Mr. Gravante filed a timely Charge of Discrimination with the United States Equal Employment Opportunity Commission Philadelphia District Office.

34.     On August 29, 2025, the EEOC issued a "Determination and Notice of Rights" ("Right to Sue Letter") to Mr. Gravante.  Mr. Gravante received his Right to Sue Letter on a date after August 29, 2025.

35.     Mr. Gravante has commenced this action within ninety (90) days of his receipt of the EEOC Right to Sue Letter.

36.      All conditions precedent to filing this civil action have been completed.

## COUNT I – AGE DISCRIMINATION

37.     Mr. Gravante repeats and reaffirms paragraphs 1 through 36 of the Complaint as if they are fully restated at length herein.

38.     Mr. Gravante is an employee under the ADEA and is over 40 years of age.  He is presently 62 years old, and he was 61 years old at the time he was terminated.

39.     SAP terminated his employment, which was an adverse employment action.

40.    Mr. Gravante was qualified for his position, having served in the roles for approximately 4.5 years prior to his termination and having received positive performance reviews.

41.    Pursuant to 29 U.S.C. § 623(a), it is unlawful to "discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."

42.    SAP selected Mr. Gravante for the reduction in force because of his age in order to, *inter alia,* replace him with a younger, less expensive employee.

43.    But for Mr. Gravante's age, he would not have been selected for layoff or termination.

44.    SAP's stated reasons for Mr. Gravante's selection in the reduction in force—restructuring and a shift to AI—were a pretext for age discrimination, as evidenced by management's explicit statements of intent to replace existing employee profiles with "younger people."

45.    SAP's termination of Mr. Gravante's employment constituted unlawful age discrimination under the ADEA and was a willful violation of the statute.

46.    Similarly, after Mr. Gravante was selected for inclusion in the reduction in force, he applied for alternative positions within SAP.

47.    Despite being qualified for these positions, he was not selected for any of them.

48.    Instead, SAP directly expressed a bias and preference for younger workers to fill the positions Mr. Gravante applied for.

49.    The failure to hire or place Mr. Gravante in any of the positions for which he applied constitutes an adverse employment action and unlawful discrimination on the basis of his age.

50.     Given his role and compensation, as well as his age, SAP's termination of Mr. Gravante's employment, and its refusal to rehire or place him in a different role, was effectively a career-ending decision.

51.     Mr. Gravante has been unable to obtain comparable employment since his discharge.

52.     Mr. Gravante has suffered economic and non-economic harm as a result of the wrongful termination of his employment and SAP's refusal to rehire him into a different role in the form of: lost wages; the loss of incentive compensation; the loss of fringe benefits, including health and retirement benefits; emotional pain and suffering; and lost future earning capacity.

53.     Pursuant to 29 U.S.C. § 626(c)(1), "any person aggrieved may bring a civil action in any court of competent jurisdiction for such legal or equitable relief as will effectuate the purposes of [the ADEA]."

WHEREFORE, Mr. Gravante respectfully requests that this honorable Court enter judgment in his favor and against SAP enjoining its discriminatory conduct and providing the following additional relief:

a.      Back pay, front pay, and compensatory and punitive damages in an amount to be determined at trial;

b.      Liquidated damages;

b.      Award him his costs and reasonable attorney's fees; and

c.      Entering an injunction eliminating all unlawful practice(s) and procedures(s);

d.      Remedying the harmful effects of past unlawful practice(s) and procedures(s);

e.      Taking further affirmative action necessary and appropriate to remedy the violations complained of herein; and

f.      Provide such further relief as the Court deems necessary, appropriate, and just.

## COUNT II – RETALIATION

54.     Mr. Gravante repeats and reaffirms paragraphs 1 through 53 of the Complaint as if they are fully restated at length herein.

55.     Pursuant to 29 U.S.C. § 623(d), the ADEA makes it unlawful for any employer to retaliate against an individual who complains of or opposes unlawful discrimination.

56.     Mr. Gravante engaged in protected activity by 29 U.S.C. § 623(d) when he complained of unlawful age discrimination related to his selection for inclusion in the reduction in force and by communicating and cooperating with SAP's internal investigation into his complaints.

57.     SAP retaliated against Mr. Gravante by failing to interview, much less select, him for any of the internal positions for which he applied that could have preserved his employment with the Company.

58.     SAP refused to interview, much less select, him for any of the internal positions for which he applied because he complained about SAP's discriminatory treatment of him on account of his age.

59.     SAP's retaliatory conduct occurred with such temporal proximity to his complaints of unlawful discrimination (i.e., within the same month he communicated with SAP's investigators) so as to give rise to an inference of unlawful retaliatory conduct.

60.     Mr. Gravante has suffered economic and non-economic harm as a result of SAP's retaliatory conduct in the form of: lost wages; the loss of incentive compensation; the loss of fringe benefits, including health and retirement benefits; emotional pain and suffering; and lost future earning capacity.

WHEREFORE, Mr. Gravante respectfully requests that this honorable Court enter judgment in his favor and against SAP enjoining its retaliatory conduct and providing the following additional relief:

c.      Back pay, front pay, and compensatory and punitive damages in an amount to be determined at trial;

d.      Liquidated damages;

c.      Award him his costs and reasonable attorney's fees; and

d.      Entering an injunction eliminating all unlawful practice(s) and procedures(s);

e.      Remedying the harmful effects of past unlawful practice(s) and procedures(s);

f.      Taking further affirmative action necessary and appropriate to remedy the violations complained of herein; and

g.      Provide such further relief as the Court deems necessary, appropriate, and just.

## <u>JURY TRIAL DEMAND</u>

Mr. Gravante demands a trial by jury on any and all issues so triable.

Respectfully submitted,

/s/ Adam H. Garner
Adam Harrison Garner (320476)
Melanie J. Garner (315058)
The Garner Firm, Ltd.
1617 John F. Kennedy Blvd., Suite 1111
Philadelphia, PA 19103
Tel: (215) 645-5955
Fax: (215) 645-5960
adam@garnerltd.com
melanie@garnerltd.com

*Attorneys for Anthony Gravante*

Dated: November 25, 2025